UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| MT. VERNON SCHOOL CORP, and HANCOCK MADISON SHELBY EDUCATIONAL SERVICES | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 1:11-cv-0637-TWP-TAB |
| vs. | ) ) | |
| A.M., by his Parents and Next Friends, RICH and PAM MAIER | ) ) ) | |
| Defendants. | ) ) | |

## ENTRY ON MOTION FOR EMERGENCY INJUNCTION

This matter is before the Court on Defendants', A.M., by his Parents and Next Friends, Rich and Pam Maier (collectively, "Defendants"), Motion for Emergency Injunctive Relief. Specifically, Defendants have asked the Court to enforce an Independent Hearing Officer's ("IHO") administrative decision and immediately compel Plaintiffs – Mt. Vernon School Corporation and Hancock Madison Shelby Educational Services (collectively, "Plaintiffs") – to place A.M. at a residential facility that caters to children with special needs. Plaintiffs urge the Court to deny Defendants' Motion or, alternatively, grant them injunctive relief enjoining the parties from implementing a new stay put placement until the appeals process runs its course. For the reasons set forth below, Defendants' Motion (Dkt. 9) is **GRANTED**.

**A.  Background**

The factual backdrop of this case is well-known to the Court, and the parties. The Court need not rehash it in detail at this time. For purposes of this motion, the relevant facts follow. Defendants requested a due process hearing before an IHO appointed by the Indiana

Superintendent of Public Instruction asking that Plaintiffs place A.M., a student diagnosed with severe autism and a language disorder, at Heartspring, a residential facility in Wichita, Kansas that treats children with autism. A hearing was held March 21 and 23-24, 2011. On April 15, 2011, the IHO issued the following order ("Order"):

> Student shall be placed in a residential setting for two years including summers. Respondents are ORDERED within thirty days to convene the case conference committee (CCC) to devise an individual education plan (IEP) for Student at Heartspring in cooperation with the Heartspring staff. The IEP should take into account the evaluation of Dr. Brouillard.
>
> Compliance with this order will constitute compliance with the Department of Education (DOE) finding of complaint violation which ordered compensatory education be provided.
>
> Respondents are further ORDERED to reimburse parents for the cost of Little Friends of Autism Center evaluation, parents' trips to Little Friends, and parent's trip to Heartspring. Parents are to provide documentation as needed.
>
> Any issue about which there is no finding of a violation is hereby DISMISSED with prejudice.

Almost immediately after prevailing before the IHO, Defendants sought to effectuate the Order by attempting to convene a case conference. Defendants' sense of urgency was understandable, given that Heartspring has agreed to hold a bed for A.M. only until June 6, 2011. A.M. will lose his place after that date. After some wrangling among counsel, Plaintiffs decided to appeal the IHO's Order and refused to participate in a case conference. Meanwhile, Defendants, their attorneys, and individuals from Heartspring attended a case conference as scheduled on May 13, 2011, and Plaintiffs opted not to participate. Locked in an impasse, Defendants then filed the present motion with this Court seeking emergency injunctive relief to force implementation of the IHO's Order.

2

**B.     Analysis**

The current dispute before the Court can be distilled into a single question: Did the IHO's Order amount to an agreement altering A.M.'s "stay put" educational placement pending judicial review? To answer this question, the Court turns to the operative regulations. Specifically, 34 CFR § 300.518(a) provides that "during the pendency of any . . . judicial proceeding . . ., <u>unless the State or local educational agency and the parents of the child agree otherwise</u>, the child involved . . . must remain in his or her current educational placement." 34 CFR § 300.518(a) (emphasis added). Further, 34 CFR § 300.518(d) fleshes out what constitutes an agreement between schools and parents. Significantly, it provides, "[i]f the hearing officer in a due process hearing conducted by the SEA or a State review official in an administrative appeal <u>agrees with the child's parents that a change of placement is appropriate, that placement must be treated as an agreement between the State and the parents for purposes of paragraph (a) of this section.</u>" CFR § 300.518(d) (emphasis added).

Here, the IHO unmistakably agreed with A.M.'s parents that a change of placement to Heartspring was appropriate. Therefore, once A.M.'s parents received this decision, A.M.'s current educational placement changed in accordance with that decision. In other words, the IHO's decision supplants the status quo and Heartspring now must be considered A.M.'s current educational placement for purposes of the stay put provision.

This position is reinforced by considerable case law. *See, e.g., West Platte R-II School District v. Wilson ex rel. L.W.*, 2004 WL 1895136, *2 (W.D.Mo. July 20, 2004) (collecting cases and granting preliminary injunction; "an administrative decision in favor of the parents is equivalent to an agreement between the state agency and the parents and, therefore, represents

3

the child's current education placement for purposes of the 'stay put' provision"); *Bd. of Educ. of Pine Plains Central School Dist. v. Engwiller*, 170 F. Supp. 2d 410, 414 (S.D.N.Y.2001) ("the law treats an administrative decision favorable to the parents and against the District as creating a *de jure* agreement between the parents and the State . . ."); *Murphy v. Arlington Cent. School Dist. Bd. of Educ.*, 86 F. Supp. 2d 354, 358 (S.D.N.Y. 2000) ("once the parents receive an administrative decision in their favor, the current educational placement changes in accordance with that decision"); *Ashland School District v. V.M.*, 494 F. Supp. 2d 1180, 1182 (D. Or. 2007) ("during the pendency of this action the School District must pay for V.M.'s placement at the facility described . . . [in] the ALJ's decision . . ."); *Escambia County Bd. of Educ. v. Benton*, 358 F. Supp. 2d 1112, 1123-24 (S.D. Ala. 2005) ("the Administrative Decision effectively constitutes an agreement between the State of Alabama and Benton's parents as to Benton's current placement for purposes of this litigation."). Moreover, the Court believes that this is the correct application of the law, even if Defendants ultimately lose on appeal. *Aaron M. ex. Rel. Glen M. V. Yomtoob*, 2003 WL 22836308, at *7 (N.D. Ill. Nov. 25, 2003) (parents were not obligated to reimburse school for costs incurred implementing a stay put placement, even if that program was later modified).

In an attempt to stave off injunctive relief, Plaintiffs make three basic arguments. All miss the mark. First, Plaintiffs contend that the IHO's Order did not change A.M.'s stay put placement because it did not articulate a new *program* for A.M. – only a new placement location. The Court disagrees. 34 CFR § 300.518(d) only requires that the hearing officer "agree[] with the child's parents that a change of placement is appropriate." Here, the IHO did just that when she ordered "student will be placed in a residential setting for two years...Respondents are

4

ORDERED within thirty days to convene the CCC to devise an IEP for Student at Heartspring with the Heartspring staff." The fact that her Order was arguably scant on details is not fatal to Defendants' motion. Plaintiffs have not presented legal authority to support their claim that the program must be fully developed before there is a placement determination.

Second, Plaintiffs highlight that the IHO's Order is not final, meaning it is appealable. Even so, this fact is of no import, given that 34 CFR § 300.518 applies to matters on appeal. Simply stated, Plaintiffs' appeal and the application of the stay put provisions are two completely separate issues. And, as a practical matter, if Plaintiffs' argument were correct, schools could wield appeals as powerful dilatory tactics. Given the protracted nature of appeals and the time-sensitive nature of IDEA cases, such delay-causing gamesmanship is discouraged and inapposite to the intent of 34 CFR § 300.518(a). Third, Plaintiffs urge the Court to apply the Fed. R. Civ. P. 65 factors in their favor. However, the law is well-settled that the Court need not apply these factors, given that the stay put provision imposes "an automatic statutory injunction." *Casey K. v. St. Anne Community High School Dist. No. 302*, 400 F.3d 508, 511 (7th Cir. 2005) (citation omitted). Stated differently, due to the automatic nature of the statutory injunction imposed by the IDEA, an application of the Rule 65 factors is unnecessary.

**C.     Conclusion**

For the reasons set forth above, Defendants' Motion for Emergency Injunction (Dkt. 9) is **GRANTED**. Plaintiffs are hereby required to abide by the IHO's Order and place A.M. at Heartspring, which is the stay-put placement during the appeal process.

Finally, the Court orders the parties to meet with the Magistrate Judge, Tim A. Baker on the June 9, 2011 at 10:00 a.m. in room 524 for an initial pretrial and scheduling conference**.**

SO ORDERED.

Date: 05/24/2011

_____
Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Copies to:

**Alexandra Marie Curlin**
THE CURLIN LAW OFFICE
amcurlin@curlinlaw.com,amcurlin@sbcglobal.net,htmccabe@curlinlaw.com

**Andrew Anthony Manna**
CHURCH CHURCH HITTLE & ANTRIM
andrew@cchalaw.com,lperry@cchalaw.com,wareham@cchalaw.com

**Catherine Marie Michael**
HOLLINGSWORTH & ZIVITZ, P.C.
CMichael@hzlegal.com,cmm137@aol.com

**Alexander Phillip Pinegar**
CHURCH CHURCH HITTLE & ANTRIM
apinegar@cchalaw.com,ruschak@cchalaw.com